993 P.2d 468

**WASHINGTON ELEMENTARY SCHOOL DISTRICT, Petitioner Employer,**

**Frank Gates Service Co., Petitioner Carrier,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Kathleen Corso Whitney, Respondent Employee.**

**No. 1CA–IC98–0191.**

Court of Appeals of Arizona, Division 1, Department A.

Jan. 13, 2000.

**68**

Ronald H. Moore, P.C. by Ronald H. Moore, Phoenix, Attorney for Petitioner Employer and Carrier.

The Industrial Commission of Arizona by Anita R. Valainis, Chief Counsel, Phoenix, Attorney for Respondent.

J. Terence Fox, Phoenix, Attorney for Respondent Employee.

## OPINION

BERCH, Judge.

¶1   In this statutory special action we review an award granting a workers' compensation claimant additional disability compensation. The question presented is whether, once the claimant's injury is determined to be work-related and therefore compensable by workers' compensation, an employer is entitled to reimbursement from the claimant's workers' compensation benefits for all short-term disability payments made to her or only for those payments that could be deducted from her workers' compensation benefits during each month in which she received such benefits. Because we conclude that Arizona law requires reimbursement from workers' compensation benefits received of all disability benefits paid, *see* Ariz. Rev.Stat. Ann. ("A.R.S.") § 23–1068(B) (1995), we set aside the award and decision upon review.

### FACTUAL AND PROCEDURAL HISTORY

¶2   Respondent Employee Kathleen Whitney ("Claimant"), a physical education teacher, injured her back while working for Petitioner Employer, Washington Elementary School District. In December of 1996, Claimant suffered a flare-up of a back injury for which she requested workers' compensation benefits in January 1997. The claim was denied and Claimant timely protested.

¶3   Because her claim for workers' compensation benefits had been denied, Claimant requested short-term disability benefits under the District's short-term disability ("STD") insurance plan for its employees. That plan provided insurance benefits for "nonoccupational injur[ies]" and made the receipt of short-term disability benefits and workers' compensation benefits mutually exclusive—that is, one could not receive both.

¶4   Claimant received STD benefits from March 4, 1997, through June 6, 1997, when the school term ended, and from September 17, 1997, when the new term began, until October 17, 1997, when her back condition was determined to be a compensable work-related injury and her short-term disability

benefits were terminated. From March through October, 1997, Claimant received STD payments totalling $10,229.18. The workers' compensation award entitled Claimant to temporary total disability payments of $1200.00 per month for the period from January 21, 1997 until October 17, 1997, for a total of $11,033.98; but she was notified that she would receive only $804.80 and the District would receive $10,229.18 as reimbursement for the STD payments it had made to Claimant,[1] pursuant to the authority in A.R.S. section 23–1068(B).

¶ 5 Claimant requested that the Commission investigate whether the ordered reimbursement was excessive. *See* A.R.S. §§ 23–1061(J) (1995) (authority to investigate), 23–1068(B) (reimbursement of STD payments). Following hearings and the submission of post-hearing memoranda, the administrative law judge ("ALJ") issued an award granting Claimant $4724.54 additional temporary disability compensation.

¶ 6 The award was affirmed on administrative review. The District then timely filed a special action petition. This Court has jurisdiction pursuant to A.R.S. sections 12–120.21(A)(2) (1992) and 23–951(A) (1995), and Rule 10 of the Arizona Rules of Procedure for Special Actions.

### DISCUSSION

¶ 7 The District's short-term disability insurance policy provides temporary payments for injuries or illnesses that are not work related.[2] It specifically excludes from coverage those claims that result from work-related injury or illness because those claims are compensable by workers' compensation. *See* A.R.S. §§ 23–901 (1996) (workers' compensation scope and definitions), 23–1021 (Supp. 1997–1998) (right of employee to compensation). Thus, when Claimant's injuries were found, at her request, to be compensable work-related claims, she became ineligible for disability benefits under the District's insurance policy and responsible to repay any amounts she received as STD payments or

allow the District to retain those amounts from the workers' compensation benefits to which she was entitled. To effectuate the reimbursement, the District withheld funds from Claimant's workers' compensation benefits, relying for its authority to do so on A.R.S. section 23–1068(B), which provides as follows:

> [I]f . . . disability benefits are paid or otherwise provided by an employer to . . . an employee for an injury . . . for which medical or compensation benefits payable pursuant to this article have been denied . . . , and such injury . . . is subsequently determined to be compensable under this article, such employer . . . shall be entitled to a direct payment out of, or a direct credit against, the medical or compensation benefits payable under this article in the amount of the benefits previously paid or provided . . . .

¶ 8 Section 23–1068(B) applies whenever disability benefits have been paid for disabilities for which workers' compensation benefits were initially denied but later granted, a situation that occurred in this case. The question before us is whether the statute requires reimbursement of disability payments to the employer from an employee's workers' compensation benefits even in those months during which the employee did not receive STD payments, if such payments are necessary to fully reimburse the employer for STD benefits paid. The ALJ determined that the answer was "no." We disagree.

¶ 9 Claimant contends that once her claim was initially determined not to be work related, she became eligible for STD benefits. She interprets A.R.S. section 23–1068 and the District's insurance plan as requiring reimbursement only of the $1200.00 per month in workers' compensation benefits for which she was later determined to be eligible, for the months in which she also received an STD payment. Thus, according to Claimant, for the months in which

---

1. $11,033.98 (the total amount of payable workers' compensation) minus $10,229.18 (the total amount of short-term disability Claimant received) equals $804.80.

2. The District's plan states: "If you become totally disabled due to a nonoccupational injury or illness, you are eligible to receive Short Term Disability (STD) Income Benefits."

she did not receive disability benefits but received workers' compensation benefits, the District could offset nothing; and for the months in which Claimant received disability benefits less than $1200.00, the District could offset only the actual amount of disability benefits paid in that particular month. Claimant maintains that the District's insurance plan authorizes her to keep the additional STD benefits paid. Because the District had offset the total amount of disability benefits paid to Claimant, regardless of the month in which the payment was received, the ALJ awarded Claimant $4724.54. We conclude that the statute and public policy compels a different result.[3]

¶ 10 Claimant advances two arguments in support of her position. The first is that this Court's opinion in *Moreno v. Industrial Comm'n*, 164 Ariz. 374, 793 P.2d 131 (App. 1990), which interprets A.R.S. section 23–1068(B) and involves a claimant who received both workers' compensation benefits and long-term disability ("LTD") payments, compels the result she seeks. There, we held that those who pay workers' compensation benefits are entitled to direct reimbursement for amounts previously paid as long-term disability benefits. *See id.* at 377, 793 P.2d at 134.

¶ 11 As relevant to this case, in *Moreno* a worker received disability benefits for an injury that left him with a permanent partial impairment. *See id.* at 374–75, 793 P.2d at 131–32. After his workers' compensation benefits claim was closed, the insurer paid the claimant maximum long-term disability benefits, unreduced by the workers' compensation benefits the worker was receiving. *See id.* The disability insurance plan at issue in *Moreno* allowed employees to receive simultaneous disability and workers' compensation benefits, but included a provision reducing the disability insurance payments by

any workers' compensation benefits payable to the claimant. *See id.* The carrier sought reimbursement for the overpayments, but the claimant refused. *See id.* at 375, 793 P.2d at 132. The employer then paid the carrier for the overpayment of disability benefits and took a credit against claimant's retroactive workers' compensation benefits, *see id.*, as did the employer in the case before us, pursuant to A.R.S. section 23–1068(B). We held that the statute anticipates precisely "this type of recoupment of an overpayment." *Moreno,* 164 Ariz. at 377, 793 P.2d at 134.

¶ 12 *Moreno* differs from the case before us in an important respect: The long-term disability policy at issue there specifically allowed a claimant to receive both workers' compensation and long-term disability payments for the same injury. *See id.* at 374–76, 793 P.2d at 131–33. The plan in *Moreno,* unlike the District's plan, was not a mutually exclusive plan. *See id.* The STD plan at issue here affords payment only for injuries that are not work related. It does not pay benefits for work-related claims such as Claimant's. Nonetheless, the court in *Moreno* required full repayment of overpaid benefits, a resolution that supports the holding we reach in this case.

¶ 13 Claimant's second argument is that the language of the District's STD plan, like the LTD plan at issue in *Moreno,* allows reimbursement to be withheld only from each monthly payment as it is made, and therefore reimbursement may not, in any given month, exceed the amount of the STD payment she actually received. To the extent that her STD payment for a month exceeds the monthly workers' compensation benefit, she maintains that she is entitled to keep the difference. As authority for her position, she relies upon *Moreno* and the language of the District insurance policy's offset provision, set forth below,[4] which allows the District to

---

**3.** We review *de novo* awards of the Commission involving questions requiring the interpretation of a statute. *See No Ins. Section v. Industrial Comm'n,* 187 Ariz. 131, 132, 927 P.2d 791, 792 (App.1996) (citing *Salt River Project v. Industrial Comm'n,* 179 Ariz. 280, 877 P.2d 1336 (App. 1994)). We determine the legislature's intent in enacting a statute from "its language, the general purpose of the act in which it appears, and the

language of the act as a whole." *Id.* at 132, 927 P.2d at 792.

**4.** The plan permits the District to recover from any individual "[w]henever payments have been made in excess of the amount necessary to satisfy the provisions of this plan." The policy provides as follows:

The amount you receive for a month of total disability will be the scheduled amount of

reduce the STD payments it makes by the amount of workers' compensation or unemployment compensation that a Claimant might receive from other sources for the same injury. Claimant argues that the provision allows her to keep the monthly STD payment of approximately $2680.00 per month, minus $1200.00, the amount of the workers' compensation benefit she should have received.

¶ 14 Claimant's .argument, however, ignores the essential feature of the District's short-term disability plan: Unlike the plan in *Moreno,* the District's plan provides coverage only for injuries or illnesses that are not work-related. *See supra* note 2. If one is entitled to workers' compensation for an injury, then one is not entitled to receive any short-term disability benefits. Thus, Claimant has taken the offset provision out of context and overlooked the primary policy term that one may not recover any short-term disability payments for a work-related claim.

¶ 15 The District's policy nonetheless acknowledges that, in certain circumstances, an employee may be entitled to receive disability payments and workers' compensation, unemployment compensation, or other payments at the same time. For example, if a worker who had a previous injury that entitled the worker to 5% permanent partial workers' compensation payments suffered a short-term disability as a result of a non work-related injury or illness, that employee would be entitled to receive STD payments, less the workers' compensation payments. In such cases, the policy's offset provision allows the District to reduce the STD payments it makes by the amount of workers' compensation or unemployment compensation that an injured employee might receive from other sources. It does not apply to recoupment of short-term disability that was paid for a non-insured claim.

¶ 16 Nothing in the policy limits the employer to recouping disability payments only as they were paid each month. Nor does any language allow Claimant to keep disability payments to which she is not entitled. The District's plan does not restrict reimbursement to the amount of each monthly payment, nor does the plain language of A.R.S. section 23–1068(B) require overpayments of benefits to be reimbursed only from monthly payments. Both the District's plan and the statute permit full reimbursement for overpayments made.

¶ 17 We reject Claimant's attempt to extend *Dimaio v. Industrial Comm'n,* 173 Ariz. 132, 840 P.2d 308 (App.1992), to the current case. *Dimaio* strictly construed section 23–1068(B) and concluded that the statute did not apply to accrued benefits such as sick or vacation leave. *See id.* at 134–35, 840 P.2d at 310–12. The current case, in contrast, unquestionably involves disability benefits.

¶ 18 The legislature enacted A.R.S. section 23–1068(B) to encourage employers to immediately pay disability benefits to injured or ill employees, even though the employees' eligibility for workers' compensation benefits for the same injury or illness has not been finally resolved. *See* 1978 Journal of Senate, 33rd Legis., 2nd Reg. Sess. 192 (Feb. 8, 1978); Minutes of Committee on Agriculture, Commerce & Labor, 33rd Legis., 2nd Reg. Sess. (March 8, 1978). Because those employers who paid early often experienced problems collecting overpayments, some employers did not pay disability benefits to claimants until their workers' compensation claims were finally denied, a situation that delayed payment and further harmed the already-injured workers.[5] *See* Minutes of Committee on Agriculture, Commerce & Labor, 33rd Legis., 2nd Reg. Sess. (March 8, 1978). To encourage prompt payment of benefits to injured workers, the legislature

---

monthly benefit minus any benefits received from other sources for the same month. If you are eligible to receive disability benefits from any of the following sources, they will be directly subtracted from your monthly short term disability income benefits.

. . . .

  b. The amount of benefits to which you are entitled under any worker's [sic] compensa-

tion law, occupational disease law, unemployment compensation law, compulsory benefit act or law, and other act or law of the like intent.

**5.** It also subjected the employer who failed to pay promptly to the possibility of a claim for breach of contract.

determined that public policy supported allowing direct recoupment of overpayments of disability insurance from workers' compensation benefits. *See* 1978 Journal of the Senate 391, 626 (March 17, 1978; May 11, 1978); *see also Hayes v. Continental Ins. Co.*, 178 Ariz. 264, 268–69 and n. 5, 872 P.2d 668, 672–73 and n. 5 (1994) (court may take judicial notice of legislative history). The result we reach in this case comports with that public policy.

¶ 19 The danger to an injured employee of denial of benefits is greatest when disability insurance and workers' compensation benefits are mutually exclusive, as they are in this case.[6] Thus, to avoid the denial of benefits, the harm that A.R.S. section 23–1068(B) was designed to prevent, we conclude that A.R.S. section 23–1068(B) applies both to mutually exclusive and non-mutually exclusive benefits.

¶ 20 While an employer may elect to provide additional coverage and supplement workers' compensation benefits, it is not required to do so. And in this case, it is clear that the District intended to preclude simultaneous entitlement to workers' compensation benefits and short-term disability benefits by including in its plan both a provision

explicitly providing that an employee could receive only one or the other—but not both—benefits for the same injury and an offset provision applicable to any workers' compensation benefits received. Since the District has not elected to supplement workers' compensation benefits, Claimant must repay the STD payments she received for her work-related injury from amounts received as workers' compensation.

## CONCLUSION

¶ 21 For these reasons, we conclude that the District is entitled to full reimbursement for short-term disability payments made to Claimant for a work-related injury. We accordingly set aside the award.

CONCURRING: NOEL FIDEL, Presiding Judge, and THOMAS C. KLEINSCHMIDT, Judge.

---

6. Employers or carriers have an incentive to deny all mutually exclusive disability benefits until eligibility is resolved. When benefits are not mutually exclusive, the incentive to deny benefits extends only to any difference between disability benefits that have been paid and workers' compensation benefits that have become payable.