212 P.3d 119

**Rita D. LEE, Petitioner,**

v.

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Banner Health, Respondent Employer,**

**Banner Health System, Respondent Carrier.**

**No. 1 CA–IC 08–0017.**

Court of Appeals of Arizona, Division 1, Department C.

March 12, 2009.

Law Office of Eric C. Awerkamp by Eric C. Awerkamp, Mesa, Attorney for Petitioner.

Andrew Wade, Acting Chief Counsel, The Industrial Commission of Arizona, Phoenix, Attorney for Respondent.

Jardine, Baker, Hickman & Houston by Scott H. Houston, Phoenix, Attorneys for Respondents Employer and Carrier.

**OPINION**

IRVINE, Presiding Judge.

¶ 1 This is a special action review of an Industrial Commission of Arizona ("ICA")

award and decision upon review denying relief pursuant to Arizona Revised Statutes ("A.R.S.") section 23–1061(J) (Supp.2007).[1] The petitioner employee ("claimant") raises one legal issue on appeal: whether the administrative law judge ("ALJ") erred by refusing to require the self-insured respondent employer, Banner Health System ("Banner"), to pay her attorney's fees incurred in pursuing her workers' compensation claim. Because we find that Banner correctly recouped the total amount of short-term disability benefits that it had paid following the successful litigation of the claimant's petition to reopen, we affirm the ALJ's award.

## I. JURISDICTION AND STANDARD OF REVIEW

¶ 2 This court has jurisdiction pursuant to A.R.S. §§ 12–120.21(A)(2) (2003), 23–951(A) (1995), and Arizona Rule of Procedure for Special Actions 10. We deferentially review reasonably supported factual findings of the ICA, but independently review its legal conclusions. *See, e.g., PFS v. Indus. Comm'n,* 191 Ariz. 274, 277, 955 P.2d 30, 33 (App.1997).

## II. PROCEDURAL AND FACTUAL HISTORY

¶ 3 On August 23, 1998, Banner employed the claimant as a telemetry floor nurse. She was injured when her right foot got caught in a telephone cord at the nurse's station, and she tripped and fell on her right knee. The claimant filed a workers' compensation claim, which was accepted for benefits. She received conservative medical treatment and returned to her regular work. The claimant's claim subsequently was closed with a two percent scheduled permanent partial impairment of the right leg.

¶ 4 On October 13, 2005, the claimant's treating doctor took her off work because of right knee complaints, and on October 19, 2005, she underwent emergency right knee surgery. The claimant then filed a petition

to reopen her 1998 industrial injury claim. She also applied for short-term disability benefits through Banner. When Banner denied the claimant's petition to reopen, she requested an ICA hearing. The claimant retained an attorney and signed a contingent fee agreement. The agreement provided that if workers' compensation benefits were found to be owing, her attorney would receive twenty-five percent of the awarded benefits.

¶ 5 Banner paid the claimant short-term disability benefits from October 20, 2005, through April 19, 2006. During the period that the claimant received these benefits, she litigated the denial of her petition to reopen. Following the litigation, an ALJ entered an award granting reopening of the claimant's 1998 industrial injury claim. Banner then directly repaid the claimant's workers' compensation benefits from its workers' compensation department to its disability benefits department, in accordance with the October 30, 2005 waiver agreement signed by the claimant.

¶ 6 The claimant and her attorney next filed an A.R.S. § 23–1061(J) hearing request for payment of the claimant's attorney's fees. Banner responded to the subsection J request by stating:

> There is no contractual or statutory right of Mr. Awerkamp to receive said fees. In addition, it is my client's position that there may not be jurisdiction before the Industrial Commission over the dispute currently being alleged.[2]

¶ 7 An ICA hearing was held for testimony from only the claimant, and the ALJ received a post-hearing legal memorandum and response. The ALJ then entered an award denying the claimant's request for relief. The ALJ summarily affirmed her award on administrative review, and the claimant brought this special action.

---

1. Arizona Revised Statutes § 23–1061(J) provides that a claimant may request an investigation by the ICA into the payment of benefits which the claimant believes that she is owed but has not been paid.

2. The parties agreed on the record prior to the hearing that the ICA had jurisdiction.

## III. DISCUSSION

■ ¶ 8 When the claimant applied for short-term disability benefits through Banner, she signed the following acknowledgment:

**Workers' Compensation Waiver**

Dear Ms. Lee:

Please read the following statement carefully. If you agree, please sign and return this letter to the Disability Department immediately. We cannot evaluate your disability claim until we receive this signed acknowledgment.

### Acknowledgment

I understand and agree that if I am awarded any Workers' Compensation benefits for any period I was paid Short Term Disability (STD)/Long Term Disability (LTD) Benefits, or if I settle my Workers' Compensation claim; I will reimburse the Disability Department any monies that I was paid by the STD/LTD department for the same period that I received Workers' Compensation benefits.

| Rita D. Lee [claimant] |
| --- |
| Print or Type Employee Name |

| Rita Lee |
| --- |
| Employee Signature |

| 10/30/05 | [ ] | [ ] |
| --- | --- | --- |
| Date | Employee Number | Facility |

If you have any questions regarding Disability Benefits, please call [ ]. All questions regarding Workers' Compensation should be directed to [ ].

Disability Department

Banner Plan Administration

¶ 9 Banner paid the claimant short-term disability for six months: October 20, 2005–April 19, 2006. Following her receipt of disability benefits, the claimant's petition to reopen was granted by an ALJ on August 31, 2006. The applicant was awarded benefits as follows:

### AWARD

**APPLICANT IS AWARDED** medical, surgical and hospital benefits, as provided by law and consistent with Finding 8, from October 20, 2005, until such time as her industrial injury is determined to be medically stationary;

**APPLICANT IS AWARDED** temporary total and/or temporary partial disability benefits, as provided by law, from February 27, 2006, until such time as her industrial injury is determined to be medically stationary.

¶ 10 Once reopening was granted, the claimant was entitled to receive workers' compensation benefits retroactive to the date that she had filed her petition to reopen. But pursuant to the claimant's workers' compensation waiver, Banner was entitled to recoup the short-term disability benefits that it had paid to her during the litigation of her workers' compensation claim. No portion of the workers' compensation benefits was paid directly to the claimant or her attorney, because the claimant already had been fully compensated through short-term disability benefits.

¶ 11 On appeal, the claimant argues that Banner benefited from her successfully litigating the petition to reopen, so it should pay a portion of the attorney's fees. Banner responds that it had no obligation to pay the claimant's attorney's fees, which were her responsibility under the contingent fee agreement, and that it was entitled to directly recoup all of the short-term disability benefits upon reopening.

¶ 12 Arizona Revised Statutes § 23–1068 (Supp.2008) addresses coordination of benefits and provides in pertinent part:

B. Except as provided in subsection D of this section, compensation is exempt from attachment, garnishment and execution and does not pass to another person by operation of law, except that:

. . . .

2. If medical, wage loss or disability benefits are paid or otherwise provided by an employer to or for the benefit of an employee for an injury or illness for which medical or compensation benefits payable pursuant to this article have been denied or for which a claim for compensation under this article has not been filed, and the

injury or illness is subsequently determined to be compensable under this article, the employer or the person authorized by the employer to provide such benefits is entitled to a *direct payment out of, or a direct credit against,* the medical or compensation benefits payable under this article in the amount of the benefits previously paid or provided.[3]

(Emphasis added.)

¶ 13 Neither this statute nor the workers' compensation waiver make any allowance for attorney's fees to be deducted from the "direct payment" or "direct credit" owed to the short-term disability benefits provider. For that reason, the claimant argues that the equitable "common fund doctrine" should require Banner's disability benefits department to pay its proportionate share of the attorney's fees and costs incurred by the claimant in litigating the petition to reopen.

¶ 14 In *Hobson v. Mid–Century Insurance Company,* 199 Ariz. 525, 19 P.3d 1241 (App. 2001), the court discussed the common fund doctrine in the context of workers' compensation benefits. It stated that the "common fund doctrine is a general rule of equity that 'a person or persons who employ attorneys for the preservation of a common fund may be entitled to have their attorney's fees paid out of that fund.'" *Id.* at 531, ¶ 15, 19 P.3d at 1247 (quoting *LaBombard v. Samaritan Health Sys.,* 195 Ariz. 543, ¶ 22, 991 P.2d 246 (App.1998)).[4]

¶ 15 In *Hobson,* the claimant sustained a compensable industrial injury and received workers' compensation benefits from his employer's insurance carrier. The claimant also pursued a third-party action, which eventually was settled with the workers' compensation carrier's approval. Pursuant to A.R.S. § 23–1023(C),[5] the workers' compensation carrier claimed a lien for the benefits it had paid against the claimant's settlement proceeds, after deduction of the claimant's attorney's fees and costs. The claimant argued that under the common fund doctrine, the workers' compensation carrier should be required to pay a portion of his attorney's fees from its lien proceeds. The court disagreed. It held that the language in A.R.S. § 23–1023(C) that the "lien shall not be subject to a collection fee" precluded any reduction of the lien amount. *Id.* at 530–31, ¶ 15, 19 P.3d at 1247.

¶ 16 In this case, the claimant argues that because A.R.S. § 23–1068(B) does not contain any prohibition on reducing the lien amount, this court should apply the common fund doctrine. We disagree. In this case, the claimant was entitled to receive either short-term disability benefits or workers' compensation benefits, but not both.

¶ 17 If the claimant initially had received workers' compensation benefits, she would have been responsible for paying her attorney twenty-five percent of the awarded benefits, pursuant to their agreement. Instead, the claimant received short-term disability benefits during the litigation of her workers'

3. We previously have recognized that the legislature enacted this provision to encourage prompt payment of disability benefits to injured workers, although their entitlement to workers' compensation benefits had not been resolved. *Wash. Elementary Sch. Dist. v. Indus. Comm'n,* 196 Ariz. 67, 71, ¶ 18, 993 P.2d 468, 472 (App.2000).

4. As recognized by the ALJ, this doctrine typically is used in class action litigation. *See, e.g., Kerr v. Killian,* 191 Ariz. 293, 955 P.2d 49 (1998).

5. The pertinent language is now found in A.R.S. § 23–1023(D) (Supp.2008):

If the employee proceeds against the other person, compensation and medical, surgical and hospital benefits shall be paid as provided in this chapter and the insurance carrier or other person liable to pay the claim shall have a lien on the amount actually collectable from the other person to the extent of such compensation and medical, surgical and hospital benefits paid. *This lien shall not be subject to a collection fee.* The amount actually collectable shall be the total recovery less the reasonable and necessary expenses, including attorney fees, actually expended in securing the recovery. The insurance carrier or person shall contribute only the deficiency between the amount actually collected and the compensation and medical, surgical and hospital benefits provided or estimated by this chapter for the case. Compromise of any claim by the employee or the employee's dependents at an amount less than the compensation and medical, surgical and hospital benefits provided for shall be made only with written approval of the insurance carrier or self-insured employer liable to pay the claim.

(Emphasis added.)

compensation claim. Apparently, she had no agreement with her attorney regarding alternative sources of benefits nor did she ever request Banner to pay any portion of the short-term disability benefits to her attorney as a fee.

¶ 18 When Banner subsequently was found to be retroactively liable for the claimant's workers' compensation benefits, A.R.S. § 23–1068(B) authorized it to receive a direct repayment of the short-term disability benefits that it had already paid to the claimant. *See, e.g., Wash. Elementary Sch. Dist. v. Indus. Comm'n*, 196 Ariz. at 69, ¶ 18, 993 P.2d at 470. In fact, the claimant received all of the workers' compensation benefits that she was awarded by the ICA, including the twenty-five percent that she owed her attorney, in the form of short-term disability benefits. Therefore, the claimant was fully compensated.

¶ 19 Our analysis might be different if the disability coverage and workers' compensation coverage were provided by distinct entities. In such a case, it would be arguable that the disability carrier benefits from the attorney's work in establishing the workers' compensation claim. *See LaBombard*, 195 Ariz. at 551, ¶ 32, 991 P.2d at 254 ("Without the litigation by LaBombard (and the assistance of her attorney), Samaritan would recover nothing."). Here, however, Banner recovered no additional monies from the workers' compensation claim because it accomplished the reimbursement for its disability payments by simply shifting funds between its own divisions. No cash changed hands. Under these circumstances, the equitable claim of Lee's attorney fails.

**CONCLUSION**

¶ 20 For the foregoing reasons, we find that Banner is not required to make any additional payment of attorney's fees, because it has already made a full payment of the workers' compensation benefits that the

claimant was awarded by the ICA.[6] We affirm the ALJ's award.

CONCURRING: PHILIP HALL, Judge.

OROZCO, Judge, dissenting.

¶ 21 Claimant was employed as a registered nurse by Banner Health System. Banner is self-insured for purposes of its short-term disability and workers' compensation insurance coverage. If an employee is injured on the job and, as in this case, Banner denies the employee's worker's compensation claim, the employee may apply for and, if eligible, obtain short-term disability benefits. If the denial of the worker's compensation claim is later determined to be error, as occurred here, the worker's compensation fund reimburses the short-term disability fund.

¶ 22 The majority holds that because Banner "simply shift[ed] funds between its own divisions," that claimant is not entitled to recover her attorneys' fees. *Supra* ¶ 19. I would hold that regardless of whether an employer is self-insured or not, whenever a short-term disability insurance carrier has a right to collect worker's compensation benefits recovered in an Industrial Commission action by an injured worker, the claimant's reasonable attorneys' fees should be deducted from the benefits paid to the short-term disability carrier. For that reason, I respectfully dissent.

¶ 23 I agree with most of the majority's analysis of *Hobson v. Mid–Century Ins. Co.*, 199 Ariz. 525, 19 P.3d 1241 (App.2001). However, we part company where they find that the common fund doctrine does not apply, even though A.R.S. § 23–1068(B) does not contain a prohibition on reducing the lien amount. *Supra* ¶ 16. The majority goes on to say that, "[in] this case, the claimant was entitled to receive either short-term disability benefits or workers' compensation benefits, but not both." *Id.* The majority misses Claimant's point.

¶ 24 Claimant is not arguing that she is entitled to receive both short-term disability

---

6. The issue in this case is contractual in nature, between the claimant and her attorney. One possible resolution would be for the attorney to

have a credit against future workers' compensation benefits.

benefits and workers' compensation benefits. Her argument is that if Banner's short-term disability division is entitled to reimbursement due to her successful litigation in her workers' compensation claim, then the short-term disability division should "pay its proportionate share of attorneys' fees and costs incurred by the [claimant]."

¶ 25 Arizona Revised Statutes § 23–1023 applies in cases in which an employee who is entitled to worker's compensation benefits recovers against a third party for his injury, and the workers' compensation insurance carrier has a lien against the recoverable amount. In *Hobson*, this court recognized that the Supreme Court held that the language from A.R.S. § 23–1023(D) (Supp.2008) "shall not be subject to a collection fee" prohibited reducing a workers' compensation lien to pay attorneys' fees. *Hobson*, 199 Ariz. at 529, ¶ 10, 19 P.3d at 1245 (citing *Liberty Mut. Ins. Co. v. Western Cas. & Sur. Co.*, 111 Ariz. 259, 260, 527 P.2d 1091, 1092 (1974)).[7] However, in this case, claimant is not requesting reduction of a worker's compensation lien to pay her attorneys' fees under A.R.S. § 23–1023(D). Instead, she is requesting a reduction of the short-term disability carrier's lien in order that her fees be paid pursuant to A.R.S. § 23–1068(B). Unlike § 23–1023(D), § 23–1068(B) is silent on whether such a reduction is allowed. I believe the common fund doctrine should apply and Claimant should be awarded her attorneys' fees.

¶ 26 "The common fund doctrine is a general rule of equity that 'a person or persons who employ attorneys for the preservation of a common fund may be entitled to have their attorney's fees paid out of that fund.'" *La-Bombard v. Samaritan Health System*, 195 Ariz. 543, 548, 991 P.2d 246, 251 (quoting *In re Estate of Brown*, 137 Ariz. 309, 312, 670 P.2d 414, 417 (App.1983)). "It is 'a recognized exception to the rule that attorney's fees in Arizona are allowed pursuant only to statute or contract.'" *Id.* at 548–49, 991 P.2d at 251–52. The reason for the common fund doctrine is to ensure

> fairness to the successful litigant, who might otherwise receive no benefit because his recovery might be consumed by the expenses; correlative prevention of an unfair advantage to the others who are entitled to share in the fund and who should bear their share of the burden of its recovery; [and] encouragement of the attorney for the successful litigant, who will be more willing to undertake and diligently prosecute proper litigation for the protection or recovery of the fund if he is assured that he will be promptly and directly compensated should his efforts be successful.

*Id.* at 549, 991 P.2d at 252 (citation omitted). However, the common fund doctrine is a rule of equity, so if a statute clearly provides that an entity is not required to pay a proportionate share of attorneys' fees, this court will not apply the doctrine to circumvent the statute. *Id.* In this case, as previously stated, there is no statute prohibiting reduction of the lien; therefore, the common fund doctrine should apply.[8]

¶ 27 There are also good public policy reasons for holding that the common fund doctrine applies in situations such as this. Worker's compensation benefits, once approved, are available indefinitely with respect to a work-related injury under the worker's compensation system, but short-term disability coverage is not. The impact of the majority's opinion in this case likely will be that

---

7. In *Hobson*, although the statute prohibited reducing the lien to pay attorneys' fees, the amount of the lien was determined by first deducting claimant's attorneys' fees from the total settlement amount. *Hobson*, 199 Ariz. at 527–28, ¶¶ 2–4, 19 P.3d at 1243–44. In other words, the claimants' attorneys were paid "off the top." *Id.* at 531, ¶ 16, 19 P.3d at 1247.

8. The majority holds the doctrine does not apply and the "equitable claim of Lee's attorney fails" because Banner, as an organization, "recovered no additional monies" and "[n]o cash changed hands." The implication is that there was no unjust enrichment of the short-term disability fund as a result of the Industrial Commission action because the money that came into the disability fund came from another Banner division. However, the short-term disability fund received an infusion of funds it would not otherwise have received. Where that money came from should be immaterial to this analysis.

attorneys will be unwilling to take worker's compensation cases on a contingency basis whenever a claimant files for and receives short-term disability benefits in the interim.[9] Moreover, the majority's opinion creates a disincentive for claimants to pursue worker's compensation claims if they receive short-term disability benefits. Therefore, workers receiving short-term disability payments will be unwilling and unable to pursue their worker's compensation claims. Consequently, when their employment with the employer who carries short-term disability ends, if they have not pursued their worker's compensation claim, their right to compensation related to their work-related injury will also end. As Claimant points out, this will create "a manipulated injustice to the applicant."

¶ 28 Our legislature no doubt had similar public policy concerns in mind when it adopted A.R.S. § 23–1069. When a claimant in a worker's compensation case or the claimant's attorney files an application for attorney's fees with the Industrial Commission prior to final disposition of the case, the commission shall fix and award "a reasonable attorney's fee" to be paid from the compensation award. A.R.S. § 23–1069(A). The attorneys' fee may be for as much as 25 percent of the award, the amount Claimant contracted to pay her attorney in this case. A.R.S. § 23–1069(B). The Industrial Commission does not have the authority to fix an attorney fee award absent an application filed prior to final disposition. *Sanchez v. Indus. Comm'n of Ariz. through Pine,* 137 Ariz. 518, 520, 672 P.2d 183, 185 (1983). The language of A.R.S. § 23–1069 is a strong indication the legislature intended that attorneys in worker's compensation cases be reasonably compensated, and that their reasonable fees be deducted from the compensation award. This is consistent with public policy favoring a system in which injured workers whose worker's compensation claims are unjustly denied can afford to hire skilled attorneys to represent them.

9. The majority states that if the disability coverage and worker's compensation coverage were provided by distinct entities, the analysis, and presumably the result, "might be different."

¶ 29 For the above mentioned reasons, I respectfully dissent.

However, it seems unlikely an attorney would depend on that distinction and risk taking on a case he might win and not get paid.